1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TERRI I. SMITH,

                Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

                Defendant.

CASE NO. 12cv5155RBL-JRC

REPORT AND
RECOMMENDATION ON
PLAINTIFF'S COMPLAINT

Noting Date: January 11, 2013

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (*see* ECF Nos. 16, 20, 21).

Here, the ALJ failed to evaluate properly the medical evidence. She failed to provide specific and legitimate reasons for her failure to credit fully opinions regarding plaintiff's functional work-related limitations as opined by plaintiff's treating

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 1

1   cardiologist. She also failed to specify adequately plaintiff's ability to sit without

2   interruption in her residual functional capacity determination.

3        Therefore, this matter should be reversed and remanded pursuant to sentence four

4   of 42 U.S.C. § 405(g) to the Commissioner for further consideration.

5                                    BACKGROUND

6        Plaintiff, TERRI I. SMITH, was forty-two years old on her alleged date of

7   disability onset of February 18, 2008 (*see* Tr. 159, 163). She has past relevant work

8   experience as warehouse worker and Certified Nurse's Assistant (*see* Tr. 22). Plaintiff

9   last worked as a care giver at an assisted living facility (*see* Tr. 18).

10

11       Plaintiff was examined by Dr. Raymond West, M.D. on November 20, 2008 (*see*

12  Tr. 534-39). Dr. West indicated in his report the following description of plaintiff's

13  alleged disability onset date:

14       The claimant worked energetically 8-16 hours a day as a caregiver until
         February 18. Prior to this eventful date, she had had a respiratory infection
15       and saw a physician. On the eventful day in question, she awakened, got
         up and prepared for the day as usual, but when she was walking to her car,
16       she fell. Bystanders performed CPR and paramedics were called. She
         states, 'I was dead for 12 minutes.' When the paramedics arrived, she was
17       shocked and taken to a hospital where she remained for five days in a
         coma. On March 5, she was transferred to the University of Washington
18       Medical Center.

19
         The claimant believes that she suffered a second myocardial infarction on
20       July 31. This time she was not hospitalized, but did attend an emergency
         department and was released to go home the same day. Later her
21       cardiologist told her that she had had a second myocardial infarction. A
         defibrillator was placed on February 18, 2008.
22
    (Tr. 534).
23

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 2

1      Plaintiff had the severe impairments of coronary artery disease ("CAD"), status

2  post defibrillator placement; obesity; and depression, as found by the ALJ (Tr. 18). Her

3  family history includes a mother who suffered from a fatal heart attack at age 42, and a

4  sister who also died of a heart attack (*see* Tr. 536).

5      Regarding mental impairments and limitations, plaintiff indicated that she had

6  sleep difficulties, including nightmares from her heart attack, and depression (*id.*). In

7  addition, the ALJ found that plaintiff had moderate difficulties with respect to social

8  functioning, finding that plaintiff had no friends and was not involved in any social

9  activities (*see* Tr. 19).

10

11                          PROCEDURAL HISTORY

12      Plaintiff protectively filed for disability insurance benefits ("DIB") pursuant to

13  Title II and Supplemental Security Income ("SSI") pursuant to Title XVI of the Social

14  Security Act in September and August, 2008, respectively (*see* Tr. 159-64). Her

15  applications were denied initially and following reconsideration (*see* Tr. 95-98, 101-02).

16  Plaintiff's requested hearing was held before Administrative Law Judge Ruperta M.

17  Alexis ("the ALJ") on June 9, 2010 (*see* Tr. 30-90). On October 20, 2010, the ALJ issued

18  a written decision in which she found that plaintiff was not disabled pursuant to the

19  Social Security Act (*see* Tr. 13-24).

20      On December 23, 2011, the Appeals Council denied plaintiff's request for review,

21  making the written decision by the ALJ the final agency decision subject to judicial

22  review (Tr. 1-5). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court

23  seeking judicial review in February, 2012 (*see* ECF Nos. 1, 3). Defendant filed the sealed

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 3

1   administrative record regarding this matter ("Tr.") on May 1, 2012 (*see* ECF Nos. 10,

2   11). In her Opening Brief, among other issues, plaintiff challenges the ALJ's review of

3   the medical evidence, such as that provided by treating cardiologist, Dr. Poole and

4   examining psychiatrist, Dr. Scurry (*see* ECF No. 16, p. 1).

STANDARD OF REVIEW

5
6         Plaintiff bears the burden of proving disability within the meaning of the Social

7   Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on

8   the fifth and final step of the sequential disability evaluation process. *Meanel v. Apfel*,

9
10  172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432

11  (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines

12  disability as the "inability to engage in any substantial gainful activity" due to a physical

13  or mental impairment "which can be expected to result in death or which has lasted, or

14  can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.

15  §§ 423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled under the Act only if plaintiff's

16  impairments are of such severity that plaintiff is unable to do previous work, and cannot,

17  considering the plaintiff's age, education, and work experience, engage in any other

18  substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A),

19  1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

20        Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

21  denial of social security benefits if the ALJ's findings are based on legal error or not

22
23  supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

24  1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

1    1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

2    such "'relevant evidence as a reasonable mind might accept as adequate to support a

3    conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v.*

4    *Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S.

5    389, 401 (1971). Regarding the question of whether or not substantial evidence supports

6    the findings by the ALJ, the Court should "'review the administrative record as a whole,

7    weighing both the evidence that supports and that which detracts from the ALJ's

8    conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting*

9    *Andrews, supra*, 53 F.3d at 1039). In addition, the Court "'must independently determine

10   whether the Commissioner's decision is (1) free of legal error and (2) is supported by

11   substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing*

12

13   *Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v.*

14   *Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

15          According to the Ninth Circuit, "[l]ong-standing principles of administrative law

16   require us to review the ALJ's decision based on the reasoning and actual findings

17   offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the

18   adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27

19   (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation

20   omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121, 2012 U.S. App. LEXIS 6570

21   at *42 (9th Cir. 2012); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir.

22   2006) ("we cannot affirm the decision of an agency on a ground that the agency did not

23   invoke in making its decision") (citations omitted). For example, "the ALJ, not the

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 5

1   district court, is required to provide specific reasons for rejecting lay testimony." *Stout,*

2   *supra*, 454 F.3d at 1054 (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). In

3   the context of social security appeals, legal errors committed by the ALJ may be

4   considered harmless where the error is irrelevant to the ultimate disability conclusion

5   when considering the record as a whole. *Molina, supra*, 674 F.3d 1104, 2012 U.S. App.

6   LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki v.*

7   *Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

8                                          DISCUSSION

9       1.  **The ALJ failed to evaluate the medical evidence properly**.

10      "A treating physician's medical opinion as to the nature and severity of an

11  individual's impairment must be given controlling weight if that opinion is well-

12  supported and not inconsistent with the other substantial evidence in the case record."

13  *Edlund v. Massanari*, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at

14  *14 (9th Cir. 2001) (*citing* SSR 96-2p, 1996 SSR LEXIS 9); *see also* 20 C.F.R. §

15  416.902. The decision must "contain specific reasons for the weight given to the treating

16  source's medical opinion, supported by the evidence in the case record, and must be

17  sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator

18  gave to the [] opinion." SSR 96-2p, 1996 SSR LEXIS 9. However, "[t]he ALJ may

19  disregard the treating physician's opinion whether or not that opinion is contradicted."

20  *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir.

21  2004) (*quoting Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). In addition,

22

23  "[a] physician's opinion of disability 'premised to a large extent upon [plaintiff]'s own

24

1  accounts of h[er] symptoms and limitations' may be disregarded where those complaints

2  have been 'properly discounted.'" *Morgan, supra,* 169 F.3d at 602 (*quoting Fair v.*

3  *Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (*citing Brawner v. Sec. HHS*, 839 F.2d 432,

4  433-34 (9th Cir. 1988))).

5       The ALJ must provide "clear and convincing" reasons for rejecting the

6  uncontradicted opinion of either a treating or examining physician or psychologist.

7  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Baxter v. Sullivan*, 923 F.2d

8  1391, 1396 (9th Cir. 1991); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if

9  a treating or examining physician's opinion is contradicted, that opinion "can only be

10  rejected for specific and legitimate reasons that are supported by substantial evidence in

11  the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035,

12  1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and

13  thorough summary of the facts and conflicting clinical evidence, stating his interpretation

14  thereof, and making findings." *Reddick, supra*, 157 F.3d at 725 (*citing Magallanes v.*

15  *Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

16       In general, more weight is given to a treating medical source's opinion than to the

17  opinions of those who do not treat the claimant.  *Lester, supra*, 81 F.3d at 830 (*citing*

18  *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)).  On the other hand, an ALJ need

19  not accept the opinion of a treating physician, if that opinion is brief, conclusory and

20  inadequately supported by clinical findings or by the record as a whole. *Batson v.*

21

22  *Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004)

23  (*citing Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)); *see also Thomas v.*

24

1   *Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  An examining physician's opinion is

2   "entitled to greater weight than the opinion of a nonexamining physician." *Lester, supra*,

3   81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. § 404.1527(d).  A non-examining

4   physician's or psychologist's opinion may not constitute substantial evidence by itself

5   sufficient to justify the rejection of an opinion by an examining physician or

6   psychologist. *Lester, supra*, 81 F.3d at 831 (citations omitted). However, "it may

7   constitute substantial evidence when it is consistent with other independent evidence in

8   the record." *Tonapetyan, supra*, 242 F.3d at 1149 (*citing Magallanes, supra*, 881 F.2d at

9   752).  "In order to discount the opinion of an examining physician in favor of the opinion

10  of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons

11  that are supported by substantial evidence in the record." *Van Nguyen v. Chater*, 100 F.3d

12

13  1462, 1466 (9th Cir. 1996) (*citing Lester, supra*, 81 F.3d at 831); *see also* 20 C.F.R. §

14  404.1527(d)(2)(i) (when considering medical opinion evidence, the Commissioner will

15  consider the length and extent of the treatment relationship).

16

17            a.   Medical evidence from treating cardiologist, Dr. Jeanne E. Poole, M.D.

18        On September 15, 2010, Dr. Poole provided her opinion regarding plaintiff's

19  various functional limitations (*see* Tr. 759-62). Dr. Poole hand wrote onto the assessment

20  form that plaintiff had "recurrent cardiac arrest and defibrillator shocks. Episodes are

21  associated with syncope [fainting] and are unpredictable. She should not be in <u>any</u> work

22  capacity due to potential injury to herself or others" (*see* Tr. 760 (emphasis in original)).

23        The ALJ included the following discussion regarding the opinion of Dr. Poole:

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 8

1    The statements dated September 15, 2010, by Dr. Poole, the claimant's
2    cardiologist, made over three months after the hearing, exaggerate the
     degree of the claimant's physical limitations. Dr. Poole stated that the
3    claimant had unpredictable, recurrent, and life threatening arrhythmias,
     resulting in syncope and potential for injury to herself and others. He
4    further reported that the claimant was limited in her ability for both fine
     and gross manipulation, and feeling. He reported that due to the
5    claimant's impairment, she was limited in her capacity for exposure to
     such things as noise, vibration, humidity/wetness, and fumes, odors,
6    chemicals, and gases (internal citation to exhibit 30F). This form is given
     limited weight. Several of these items go well beyond the area of
7    expertise of a cardiologist. Dr. Poole does not relate specific clinical
     findings to the limitations he cites. Indeed, the form is quite terse and not
8    a narrative report of a reasoned opinion based on objective medical
     findings. It does not appear to have been prepared for the medical
9    purpose of diagnosis or treatment but rather for the adjudication of
     disability.
10

11   (Tr. 22).

12       The Court notes that the ALJ failed to explain how the record demonstrates that

13   Dr. Poole's September 15, 2010 opinions "exaggerate the degree of the claimant's

14   physical limitations" (*see id.*). The ALJ's findings must be based on substantial evidence

15   in the record as a whole. *See Bayliss*, *supra*, 427 F.3d at 1214 n.1 (*citing Tidwell*, *supra,*

16   161 F.3d at 601). The record demonstrates that plaintiff had one, if not two, occurrences

17   of cardiac arrest, resulting in her receiving a defibrillator; and that she fainted during at

18   least the first episode (*see* Tr. 534, 760). Dr. Poole's opinion that plaintiff "had

19   unpredictable, recurrent, and life threatening arrhythmias, resulting in syncope [fainting]

20   and potential for injury to herself and others" does not appear to be an exaggeration,

21   based on the relevant record. In order for the ALJ to reject contradicted opinions from a

22   treating physician, the ALJ must provide specific and legitimate reasons supported by

23   substantial evidence in the record. *See Lester, supra*, 81 F.3d at 830-31 (*citing Andrews*,

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 9

1  supr*a*, 53 F.3d at 1043). Based on the relevant record, the Court concludes that the ALJ

2  did not provide adequate explanation of how the record demonstrates that Dr. Poole's

3  opinions were exaggerations of plaintiff's physical limitations. *See id.; see also Reddick,*

4  *supra*, 157 F.3d at 725 (*citing Magallanes*, *supra*, 881 F.2d at 751) (The ALJ can

5  accomplish the provision of specific and legitimate reasons sufficient to reject the

6  contradicted opinion of an examining physician by "setting out a detailed and thorough

7  summary of the facts and conflicting clinical evidence, stating h[er] interpretation

8  thereof, and making findings").

9

10      The ALJ also relied on Dr. Poole's specialty in cardiology, implying that Dr.

11  Poole's opinions regarding plaintiff's limitations with respect to fine and gross

12  manipulation, and feeling; and "capacity for exposure to such things as noise, vibration,

13  humidity/wetness, and fumes, odors, chemicals, and gases" went "well beyond the area of

14  expertise of a cardiologist" (*see* Tr. 22). The ALJ appears to rely on her own medical

15  expertise in order to find that medical expertise with respect to issues such as blood

16  supply and the oxygenation levels of a particular post-heart attack patient's blood is

17  irrelevant to issues such as the patient's ability to use effectively her hands and to have

18  adequate sensation in her hands and also is irrelevant to the issue of whether or not the

19  patient's potentially decreased oxygen supply to the lungs may affect her capacity for

20  exposure to things such as chemicals or humidity. Although the ALJ failed to credit Dr.

21  Poole's opinions fully due to the ALJ's finding that Dr. Poole's findings exceeded her

22  expertise, an ALJ must explain why her opinions regarding a patient's medical

23  impairments and their resultant functional limitations are more correct than those of the

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 10

1  doctor. *See Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-

2  22 (9th Cir. 1988)).

3       Ironically, the requirement that an ALJ adequately explain why her own

4  interpretation of the medical evidence is more accurate than the interpretation of the

5  doctor, exists in part so that the ALJ does not make findings that exceed her own

6  expertise. *See id.; Smith v. Astrue*, 2012 U.S. Dist. LEXIS 61640 at *11 (W.D. Wash.

7  April 4, 2012) (unpublished opinion) (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118

8  (7th Cir. 1990) ("judges, including administrative law judges of the Social Security

9  Administration, must be careful not to succumb to the temptation to play doctor. The

10  medical expertise of the Social Security Administration is reflected in regulations; it is

11  not the birthright of the lawyers who apply them. Common sense can mislead; lay

12  intuitions about medical phenomena are often wrong") (internal citations omitted)). The

13  ALJ's finding that a medical doctor with advanced training and certification in cardiology

14  does not have expertise related to such topics such as how coronary artery disease may

15  affect the functional use of the upper extremities during regular full-time work activity or

16  affect the capacity for exposure to environmental toxins, chemicals or humidity, is not

17  based on substantial evidence in the record.

18       Also, the ALJ relied on a finding that Dr. Poole's opinions appeared not to "have

19  been prepared for the medical purpose of diagnosis or treatment but rather for the

20  adjudication of disability," in order to support her failure to credit fully Dr. Poole's

21  opinions (*see* Tr. 22). Defendant concedes error in the ALJ's reliance on this factor, but

22  contends that the error was harmless (*see* Response, ECF No. 20, p. 8 n.1 (*citing Lester,*

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 11

1  *supra*, 81 F.3d at 832; *Reddick, supra*, 157 F.3d at 726)). However, the Court does not

2  agree with defendant's characterization of the error, as the Court does not find any of the

3  other reasons supplied by the ALJ to be adequate.

4      The only other reason supplied by the ALJ was her finding that Dr. Poole did "not

5  relate specific clinical findings to the limitations she cites," and failed to provide a

6  narrative report explaining her objective medical findings (*see id.*).  The Court notes that

7  physicians generally are engaged in the task of diagnosing and treating impairments:

8  They do not appear routinely to provide detailed explanation of how their opinions of a

9  patient's functional limitations are related to specific clinical findings throughout their

10  treatment record. The ALJ's implied failure to credit fully Dr. Poole's opinion because

11  she did not provide a narrative report explaining which specific findings in her treatment

12  reports supported each of her opined limitations, in the context of the relevant record

13  herein, does not entail specific and legitimate reasons for discounting the functional

14  limitations opined by plaintiff's treating cardiologist. *See Lester, supra*, 81 F.3d at 830-31

15  (*citing Andrews*, supr*a*, 53 F.3d at 1043).

16      For the reasons stated and based on the relevant record, the Court concludes that

17  the ALJ failed to provide specific and legitimate reasons supported by substantial

18  evidence in the record as a whole for her failure to credit fully opinions from treating

19  cardiologist, Dr. Poole. The Court also agrees with plaintiff that the errors in the

20  evaluation of this aspect of the medical evidence were harmful, as Dr. Poole opined that

21  plaintiff was more limited than determined by the ALJ in her residual functional capacity

22  determination ("RFC"). The ALJ relied on the RFC when making the ultimate

23

24

1 determination that plaintiff was not disabled, evidencing the harmfulness of the error.

2 Therefore, this matter should be reversed and remanded to the Commissioner for further

3 consideration.

4

5      b. Medical evidence from examining psychiatrist, Dr. Tanya Scurry, M.D.

6   The ALJ gave significant weight to "the opinion of consultative psychiatric

7 examiner, Dr. Scurry, who stated on October 25, 2008, that the claimant was able to

8 understand, remember, and carry out simple one or two step job instructions" (*see* Tr.

9 21). However, in the ALJ's determination regarding plaintiff RFC, the ALJ failed to

10 include any limitation to one or two step job instructions, although she limited plaintiff to

11 simple tasks (*see* Tr. 20). Defendant asserts that the limitation to simple tasks "adequately

12 accounted for Dr. Scurry's limitation to simple one- or two-step instructions" (*see*

13 Response, ECF No. 20, p. 12). However, defendant fails to provide any evidence or

14 citation for this assertion.

15   According to Social Security Ruling ("SSR") 96-8p, a residual functional capacity

16 assessment by the ALJ "must always consider and address medical source opinions. If the

17 RFC assessment conflicts with an opinion from a medical source, the adjudicator must

18 explain why the opinion was not adopted." *See* SSR 96-8p, 1996 SSR LEXIS 5 at *20.

19 Although "Social Security Rulings do not have the force of law, [n]evertheless, they

20 constitute Social Security Administration interpretations of the statute it administers and

21 of its own regulations." *See Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir.

22 1989) (*citing Paxton v. Sec. HHS*, 865 F.2d 1352, 1356 (9th Cir. 1988)) (internal citation

23

24

1   and footnote omitted). As stated by the Ninth Circuit, "we defer to Social Security

2   Rulings unless they are plainly erroneous or inconsistent with the [Social Security] Act or

3   regulations." *Id.* (*citing Chevron USA, Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-45 (1984);

4   *Paxton, supra*, 865 F.2d at 1356).

5       Because the Court already has decided that this matter must be reversed and

6   remanded to the Commissioner for further administrative proceeding, *see supra*, section

7   1.a, the ALJ, if necessary following remand of this matter, should determine explicitly

8   whether or not plaintiff's RFC limits her to one or two-step instructions, and should

9   explicitly present to the vocational expert, if vocational testimony is relevant, a

10  hypothetical that explicitly contains such restriction, if present.

11
12      Similarly, the Court is not convinced by defendant's argument that the ALJ's

13  limitation on plaintiff to simple work necessarily adequately addressed plaintiff's

14  moderate limitations in concentration; and attention, persistence and pace, as opined by

15  Dr. Scurry (*see* Response, ECF No. 20, p. 12; *see also* Reply, ECF No. 21, p. 10). It

16  appears to the Court that a person may be capable of simple tasks, yet not be able to

17  perform them at an adequate pace. If the ALJ assessing this matter following remand

18  reaches the RFC determination step of the sequential disability evaluation process, any

19  limitations on plaintiff's concentration, or attention, persistence and pace, should be

20  determined explicitly.

21  //

22  //

23  //

24  //

1

2. **The ALJ's residual functional capacity determination was not sufficiently**

2

**specific regarding plaintiff's ability to sit without changing position.**

3

The ALJ gave significant weight to the opinions of Dr. West (Tr. 21 (*citing*

4

Exhibit 11F, *i.e.*, 534-39)). After performing a physical examination, Dr. West provided

5

numerous opinions regarding plaintiff's ability to function in a work setting, including his

6

opinion that she could "stand and [] walk for four hours cumulatively in an eight-hour

7

day providing she is able to rest frequently and is not obliged to exert herself (*see* Tr.

8

539). Dr. West also opined that plaintiff was "able to sit for six hours cumulatively in an

9

eight-hour day providing she is able to move about from time to time" (*id.*).

10

11

Similar to the opinion of Dr. West, the ALJ found that plaintiff had the residual

12

functional capacity ("RFC") to "sit for six hours in an eight-hour workday with the

13

opportunity to change position and with normal breaks" (*see* Tr. 20). The Court notes that

14

the ALJ's limitation requiring the "opportunity to change position" is not very specific

15

with respect to time. It likewise is not specific with respect to the types of positions

16

referred to by the ALJ.

17

The Court does not find persuasive defendant's argument that the ALJ refers to

18

plaintiff's ability to "change positions <u>while seated</u>" (*see* Response, ECF No. 20, p. 9

19

(emphasis in original)). The Court finds more persuasive plaintiff's contentions that in

20

"Social Security law, there are three main positions: sitting, standing, and walking;" and

21

that there "is no such thing as changing from the sitting to the sitting position" (*see*

22

23

Reply, ECF No. 21, p. 6 (*citing and quoting* Social Security Rulings "SSR" 83-10; SSR

24

83-12; SSR 96-9p ("Alternate sitting and standing: An individual may need to alternate

1  the required sitting of sedentary work by standing (and, possibly, walking)

2  periodically")))

3      Plaintiff complains that the ALJ's RFC determination regarding plaintiff's ability

4  to sit is so general that it does not distinguish the relevant determinations of whether or

5  not plaintiff can sit continuously for two hours, thirty minutes, or less, without the

6  opportunity to change positions and move out of her chair (*see* Opening Brief, ECF No.

7  16, pp. 13, 16). Plaintiff also contends the ALJ's review on this issue violates Social

8  Security Rulings (*see id.*, pp. 13-17). Again, the Court is persuaded by plaintiff's

9  contentions.

10

11      As plaintiff points out in her Opening Brief, there "are two main parameters with

12  respect to a claimant's need to sit: how much total sitting a claimant can do in an eight-

13  hour workday and how long a claimant can sit without interruption" (*see* ECF No. 16, p.

14  13). As argued by plaintiff, the full range of sedentary work requires not only the ability

15  to sit for about six hours total in an eight-hour workday, but also "the ability to sit for

16  uninterrupted intervals of two hours" (*id.* (*quoting and citing* SSR 96-9p; 83-10; and 83-

17  12 (specifying that a full range of sedentary work requires sitting "for 'prolonged

18  periods'")).

19      As indicated previously, although "Social Security Rulings do not have the force

20  of law, [n]evertheless, they constitute Social Security Administration interpretations of

21  the statute it administers and of its own regulations." *See Quang Van Han*, *supra*, 882

22  F.2d at 1457 (*citing Paxton*, *supra*, 865 F.2d at 1356) (internal citation and footnote

23  omitted). As stated by the Ninth Circuit, "we defer to Social Security Rulings unless they

24

1   are plainly erroneous or inconsistent with the [Social Security] Act or regulations." *Id.*

2   (*citing Chevron*, *supra*, 467 U.S. at 842-45; *Paxton, supra*, 865 F.2d at 1356).

3       In addition to the Social Security Rulings already cited and quoted above, SSR 96-

4   9p indicates that the assessment by the ALJ "must be specific as to the frequency of the

5   individual's need to alternate sitting and standing." SSR 9609p; *see also Arnett v. Astrue*,

6   676 F.3d 586, 593-94 (7th Cir. 2012). The ALJ failed to comply with this requirement for

7   specificity.

8       Based on the relevant record, the Court concludes that the finding by the ALJ that

9   plaintiff had the residual functional capacity ("RFC") to "sit for six hours in an eight-hour

10

11  workday with the opportunity to change position" does not indicate specifically how long

12  plaintiff could sit continuously without the opportunity to change from the seated position

13  to a position other than sitting (*see* Tr. 20). If relevant following remand of this matter,

14  plaintiff's RFC regarding her ability to sit continuously should be determined explicitly.

15

16      3.   **This matter should be reversed and remanded for further proceedings**.

17      Generally when the Social Security Administration does not determine a

18  claimant's application properly, "'the proper course, except in rare circumstances, is

19  to remand to the agency for additional investigation or explanation.'" *Benecke v.*

20  *Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth

21  Circuit has put forth a "test for determining when [improperly rejected] evidence

22  should be credited and an immediate award of benefits directed." *Harman v. Apfel*,

23  211 F.3d 1172, 1178 (9th Cir. 2000). It is appropriate when:

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 17

1

2

3

4

      (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

5

6

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir.1996)).

7

      Here, the Court finds that outstanding issues must be resolved. *See Smolen, supra*,

8

80 F.3d at 1292. Furthermore, the decision whether to remand a case for additional

9

evidence or simply to award benefits is within the discretion of the court.  *Swenson v.*

10

*Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989) (*citing Varney v. Secretary of HHS*, 859 F.2d

11

1396, 1399 (9th Cir. 1988)).

12

      The ALJ is responsible for determining credibility and resolving ambiguities and

13

conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998);

14

*Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).  If the medical evidence in the

15

record is not conclusive, sole responsibility for resolving conflicting testimony and

16

questions of credibility lies with the ALJ.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th

17

Cir. 1999) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing*

18

*Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).

19

20

      Therefore, remand is appropriate in order to allow the Commissioner the

21

opportunity to consider properly all of the medical evidence as a whole and to incorporate

22

the properly considered medical evidence into the consideration of plaintiff's residual

23

functional capacity. *See Sample, supra*, 694 F.2d at 642.

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 18

1

2                                          CONCLUSION

3           Based on these reasons and the relevant record, the undersigned recommends that

4    this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. §

5    405(g) to the Commissioner for further consideration.  **JUDGMENT** should be for

6    **PLAINTIFF** and the case should be closed.

7           Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

8    fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R.

9    Civ. P. 6.  Failure to file objections will result in a waiver of those objections for

10   purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C).

11

12   Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the

13   matter for consideration on January 11, 2013, as noted in the caption.

14          Dated this 21st day of December, 2012.

15

16

17                                          J. Richard Creatura
                                            United States Magistrate Judge

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 19